UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PETER GUCINSKI,

                         Plaintiff,              12-CV-0276(MAT)

            v.                                   **DECISION**
                                                 **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                         Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff Peter Gucinski ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt.##6, 12. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard his case was erroneous because it was not supported by substantial evidence contained in the record, or was legally deficient and therefore he is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#7) 3-13.

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

The Commissioner cross-moves for judgment on the pleadings on the grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#13) 9-20.

## BACKGROUND

On January 21, 2005, Plaintiff filed an application for DIB alleging disability beginning in October, 2003, due to knee and back conditions caused by a motor vehicle accident. T. 81, 336-58.[2] Plaintiff's application was initially denied, and a hearing was requested. On April 17, 2008, ALJ Nancy Lee Gregg issued a written decision finding that Plaintiff was not disabled. T. 12-31. In July, 2008, the Appeals Council denied Plaintiff's request for review, and the ALJ's determination became the Commissioner's final decision. T. 4-6, 7-11.

A civil action in this Court was filed on September 30, 2008 (08-cv-0726WMS). T. 382-86. By Stipulation and Order this Court remanded Plaintiff's claims back to the Commissioner for further administrative proceedings pursuant to 42 U.S.C. §405(g). Gucinski v. Astrue, 08-cv-0726WMS, Dkt.##6, 8. On May 4, 2009, the Appeals Council effectuated the Court's order. T. 382-86.

Following the remand, a hearing was held on April 9, 2010, wherein Plaintiff appeared with his attorney before ALJ Gregg.

---

[2] Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by Commissioner as a separately bound exhibit in this proceeding.

Vocational Expert ("VE") Timothy P. Janikowski, Ph.D., also testified. T. 530-33.

In applying the five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found that Plaintiff engaged in substantial gainful activity from June to September, 2006, and continuously since January 1, 2007. T. 342. Plaintiff's counsel requested a closed period of disability with a trial work period beginning April 7, 2006, through February 1, 2007.[3] The ALJ proceeded through the sequential evaluation process to determine whether Plaintiff was disabled and entitled to a trial work period. T. 342.

The ALJ found that Plaintiff had the following severe impairments: mild degenerative changes and compression deformity (possibly old) at T8 and T9 (or D8/D9); disc degeneration with minimal annular bulge but no disc herniation at L3-4; disc dessication from T7-8 to T11-12 with slight annular bulging at each level and degenerative changes with Schmorl's nodes within the endplates, but no disc herniation or nerve root or spinal cord compression; and degenerative changes of both knees, with an

---

[3] Starting October 28, 2003, Plaintiff was unable to perform any work due to the nature and severity of his injuries and impairments. T. 349. The period from October 28, 2003, to May 11, 2004, during which Plaintiff could not work, did not last for the required durational period.

antierior cruciate ligament ("ACL") tear of the left knee. T. 342. Plaintiff also had a fracture of the left fifth and sixth anterior ribs; pulmonary contusion/atelectasis and small subcutaneous emphysema along the left lateral chest wall; a Grade II liver laceration and Grade I splenic laceration; and pulmonary edema/small pneumothorax; all of which were severe but non-durational. T. 342-43. The ALJ further found that Plaintiff had the non-severe impairments of small disc protrusions at C3-4 and C4-5 and fatty infiltration of the liver. T. 343.

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of the Listings set forth at 20 C.F.R. Part 404, Subpart P, Appx. 1. T. 23-24. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") by May 11, 2004 to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit for 6 hours total in an 8-hour workday with normal breaks; and stand and/or walk intermittently for 2 hours total in an 8-hour workday with normal breaks. He could frequently balance and occasionally climb and descend stairs and stoop, but could not kneel, crouch, or crawl. T. 349. By May 11, 2004, Plaintiff was  was capable of performing other jobs that existed in significant numbers including cashier, bench assembler, and office helper. T. 357.

By November 30, 2004, Plaintiff could stand and/or walk for 6 hours with normal breaks; occasionally stoop, kneel, crouch, and crawl; lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours total with normal breaks; frequently balance; and occasionally climb and descend stairs. T. 349. As of this date his impairments had improved, thus increasing the number of jobs available to him, including additional cashier jobs, packing line worker, cleaner/housekeeper, and information clerk. T. 358.

On May 28, 2010, the ALJ issued a written decision finding that during the period from May 11, 2004 through January 31, 2007, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. T. 358.

Plaintiff requested that the Appeals Council review the ALJ's decision. T. 330-32. Nearly two years later, the Appeals Council declined to assume jurisdiction on February 6, 2012, and the ALJ's determination became the final decision of the Commissioner. T. 327-29, 330-32. This timely action followed. Dkt.#1.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**DISCUSSION**

I.  **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits

the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. **Medical Evidence**

### A. **Hospitalization**

Plaintiff was hospitalized from October 28 through November 5, 2003, due to injuries suffered in a motor vehicle accident. T. 133-81. An examining physician observed left pelvis contusions; laceration of the scalp, left leg, and spleen; multiple left rib fractures; and abrasions of the abdomen and thorax. T. 133-34, 145. CT scans of Plaintiff's pelvis, abdomen, and cervical spine showed

lacerations of the liver and spleen; multiple left rib fractures; small pneumothoraces, bilaterally; small subcutaneous emphysema along the left lateral chest wall; probable pulmonary contusion of the left base; and small posterior and central disc protrusions at the C3-C4 and C4-C5 levels. T. 147-48. X-rays of the thoracic spine revealed mild degenerative changes along with compression deformities at the D8 and D9 vertebral bodies. T. 149. An x-ray of the left knee revealed osteoarthritic changes along the medial aspect and a loose bony body within the knee. T. 150. X-rays of the lumbrosacral spine, pelvis, left femur, left tibia, and left fibula were unremarkable. T. 150-51. Chest x-rays taken throughout the course of Plaintiff's hospitalization revealed bibasilar atelectatic changes about the left lower lobe, and a possible pulmonary edema as well as a mild left pleural effusion that decreased during hospitalization. T. 136-146. The discharge diagnosis was stable liver and spleen lacerations; multiple rib fractures; compression fracture at the T8-T9 level; head laceration; and bilateral subjunctival hemorrhage. T. 134.

**B.   Treating Physicians**

Surgeon Dr. William Flynn treated Plaintiff from November, 2003, to February, 2004. During that time, Dr. Flynn assessed that Plaintiff was disabled through March 11, 2004, due to his injuries. T. 129, 131-32. A CT scan of Plaintiff's abdomen and pelvis, taken on February 5, 2004, revealed primarily healed rib fractures, a

completely healed liver and spleen, and unremarkable pancreas and kidneys. T. 130.

Orthopedic surgeon Dr. Anthony Leone treated Plaintiff from February, 2004 to April, 2005 for complaints of back pain. T. 208-17. In February, 2004, Plaintiff's gait, muscle strength, range of motion, reflexes, and sensations were normal, with a negative straight leg raise. T. 217. MRIs of Plaintiff's thoracic spine and lumbar spine taken on March 11, 2004, revealed a disc desiccation from T7-T8 through T11-T12 with slight bulging in the posterior annulus and no herniation; and L3-L4 disc desiccation with minimal circumferential annular bulge and no herniation, respectively. T. 162-63. On February 11, 2005, Dr. Leone assessed that Plaintiff had mild-to-moderate partial disability with respect to his lumbar spine and was totally disabled from performing his usual job. T. 209. The physician further noted that despite a recommendation for physical therapy for his back, Plaintiff did not attend because he did not have time due to a new baby. Id. By April, 2005, Dr. Leone noted that while physical therapy was not helping to alleviate the reported symptoms, Plaintiff had no lower extremity or radicular symptoms, and no numbness, tingling, dysesthesias, paresthesias, or weakness. He stated that Plaintiff was not a surgical candidate and had no further recommendations. T. 208.

Dr. Anthony Caruso, a chiropractor, treated Plaintiff for complaints of mid and lower back pain from March to July, 2004.

-Page 9-

T. 164-80.  Upon examination, Plaintiff reported pain upon range of motion and moderate-to-severe spasms and tenderness of the thoracic and lumbar spine. T. 180.  Straight leg raising was positive at 60 degrees in the supine position. Id.  On spinal evaluation, Dr. Caruso noted fixations at the bilateral sacroiliac joints and the L3, L4, L5, T4, T5, T6, T8, T9, T11, and T12 discs. Id. Dr. Caruso diagnosed thoracic spine and lumbar spine sprain/strain complicated by intersegmental dysfunctions. Id.

Plaintiff saw Dr. Joseph Buran, an orthopedic surgeon, from April to November, 2004 for complaints of left knee pain. T. 189-204. Dr. Buran assessed a torn ACL. T. 201-02, 204. X-rays of Plaintiff's knees taken on May 27, 2004, revealed moderate bony degenerative changes in the left knee, and minimal-to-moderate bony degenerative changes in the right knee. T. 200. ACL surgery was performed on Plaintiff's left knee on July 28, 2004. T. 189-90. One month later, Dr. Buran assessed that Plaintiff was totally disabled. T. 193. In November, 2004, Dr. Buran noted that Plaintiff's left knee was stable and doing well with no buckling or swelling. T. 191.

Internist Dr. Robert Cotsen examined Plaintiff on December 15, 2004 for complaints of back pain, and observed that Plaintiff appeared healthy with normal gait. Motor examination was symmetrical, reflexes and sensations were normal, and straight leg raising tests were negative. T. 295. Plaintiff exhibited a limited

range of motion and some tenderness in his thoracic spine and lumbar spine, and his left knee exhibited a limited range of motion with no tenderness. Dr. Cotsen assessed compression fracture of T8 and T9; thoracic sprain/strain; post-surgical repair of the left ACL; osteoarthritis of the left knee; pleural scarring of the left hemithorax secondary to previous pneumothorax and contusion of the lung; and healed lacerations of the scalp, and anterior left leg. T. 296. He opined that Plaintiff's back pain would not improve but his left knee pain may improve, and concluded that Plaintiff could not return to his prior work as a deliveryman but may be able to perform a part-time sedentary job that allowed him to get up and move around. Id.

An abdominal ultrasound taken October 27, 2005, was unremarkable but for the suggestion of an underlying diffuse fatty infiltration of the liver. T. 242. An x-ray of Plaintiff's right knee taken on May 24, 2006, was unremarkable. T. 239.

### C.   Consultative Examinations

Dr. Stephen Joyce conducted an independent orthopedic examination at the request of the Worker's Compensation Board on March 22, 2005. T. 205-07. Plaintiff reported that his left knee was "a lot better," that he could handle stairs well, had no difficulty walking, and had no swelling. He complained of lower back pain exacerbated by prolonged sitting or standing. Id. Dr. Joyce assessed a moderate partial disability. T. 207.

Consultative physician Fenwei Meng, M.D., examined Plaintiff in June, 2005, and assessed mild limitations in heavy lifting, walking, standing, running, and walking up and down stairs; and moderate limitations in bending, extension, and twisting. T. 227-28. Plaintiff's physical examination yielded normal results, with the exception of 90-degree flexion extension of the left knee and muscle strength and grade 5-/5 in the left leg. T. 227. Plaintiff reported that he cooked, cleaned, did laundry, showered, dressed himself, and took care of his infant child. T. 226. Plaintiff was diagnosed with back pain with spinal compression fracture; left knee status-post torn ligament; and status-post motor vehicle accident with lacerations. T. 227.

## III. <u>Non-Medical Evidence</u>

Plaintiff is a high school graduate who was 41 years old at the close of his requested period of disability. T. 78, 86. His past work experience included employment as a security guard and delivery truck driver. T. 82, 465.

In January 12, 2006, Plaintiff self-reported the intensity of his back condition as moderate. T. 265. He stated that he could neither sit nor stand for more than one hour without difficulty, had difficulty walking for more than one mile at a time, and could not lift heavy weights off of the floor, but could manage light-to-medium weights if they were placed on a table. Id. He could not perform his usual work, but his social life was not significantly

affected. Id. Plaintiff rated the intensity of his neck condition as very mild, which caused slight difficulty with reading and concentration as well as moderate problems with driving. T. 264. He could engage in most, but not all of his usual recreational activities and had slight, but infrequent headaches. Id.

Three months later, Plaintiff again self-reported the intensity of his back condition as moderate. T. 261. He stated that he could neither sit nor stand for more than thirty minutes continuously without difficulty, had some difficulty walking, which did not increase with distance. He reported no problems with personal care, but could not lift heavy weights from the floor. His social life was not significantly affected and his condition was slowly improving. Id.

From May to October, 2006, Plaintiff was seasonally employed at Darien Lake Theme Park as a patrolman. T. 427-30. Plaintiff then worked at PCB Piezotronics, Inc., for the month of January, 2007, before resigning. From February, 2007, to the time of the ALJ's post-remand decision, Plaintiff was employed full-time as a New York State corrections officer. T. 441-47.

At the disability hearing in November, 2007, Plaintiff testified that he was disabled due to injuries sustained in his October, 2003 car accident. T. 305, 315. He stated that he was able to walk within two or three months of the accident. T. 316. Plaintiff claimed that he experienced severe back pain, ranging, on

a scale of 10, from 6 out of 10 to 9 out of 10 for one year following the accident. T. 316-17. He experienced exacerbations of his back pain about three to four times per week, at which times he took medication and laid on the floor for 1.5 to 2 hours at a time. T. 317.

Plaintiff underwent left knee surgery in July, 2004, and thereafter walked with a limp and was unable to walk on uneven terrain for about three months. T. 318.

Plaintiff testified that prior to April, 2006, he was unable to stand and sit for long periods of time and occasionally needed to lay down. T. 322. Although his back pain did not completely subside, he was able to return to full-time work in April, 2006. T. 318-19, 320-22. From the date of the accident until he returned to work, Plaintiff alleged that he was incapable of performing household chores, could hardly lift anything, and could barely get out of bed on occasion. T. 320.

Following remand, the ALJ heard testimony from VE Timothy Janikowski on April 9, 2010. She asked the VE to consider a hypothetical individual of Plaintiff's age, educational background, and work experience with the following limitations: lifting/carrying 20 pounds occasionally and 10 pounds frequently; sitting for about 6 hours and standing and/or walking for about 2 hours intermittently with normal breaks; frequently balance; occasionally climb, descend stairs, and stoop; and no crouching,

kneeling, or crawling. T. 530. The VE responded that such an individual could perform the jobs of cashier, bench assembler, and office helper.

## IV.  **The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

### A.  **Findings at Steps Four and Five**

Plaintiff first contends that the ALJ erred in her findings at steps four and five of the sequential analysis because the period of April 7, 2006 through February 1, 2007 should have been regarded as a trial work period. Pl. Mem. 5-7.

A trial work period is defined in the regulations as "a period during which [the DIB applicant] may test [his] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). The period may last up to nine months, and the months do not necessarily have to be consecutive. Id. "The trial work period begins with the month in which [the applicant] become[s] entitled to disability insurance benefits..." 20 C.F.R. § 404.1592(e).

In the instant case, a finding that Plaintiff's 2006-07 work activity was a trial work period could not have been made because there had been no determination that plaintiff became entitled to DIB in April of 2006, the month in which he began to work.  A DIB applicant must be disabled in the first instance to qualify for a trial work period. See 20 C.F.R. 404.1592(d)(1) ("You are generally entitled to a trial work period if you are entitled to disability insurance benefits ..."); Miller v. Astrue, 538 F.Supp.2d 641, 653

(S.D.N.Y. 2008). Because the ALJ's determination that plaintiff was not entitled to disability benefits in April 2006 is supported by substantial evidence,[4] the determination that plaintiff is not entitled to a trial work period is also supported by substantial evidence.

Second, Plaintiff challenges the ALJ's RFC determination with regard to her assessment of Plaintiff's exertional limits. Pl. Mem. 5-7.

Here, the ALJ determined at steps two and three that Plaintiff had severe impairments that did not meet the levels required by the Listings. T. 342-49. She then went on to find that from October 28, 2003 to May 10, 2004, Plaintiff was unable to perform any work due to his injuries and impairments. He was not, however, entitled to DIB during this time since the time period did not satisfy the 12-month durational requirement of the Act. See 32 U.S.C. § 423(d) (entitlement to DIB requires claimant to demonstrate disability for a period of at least 12 months).

The ALJ then properly determined that, as of May 11, 2004, Plaintiff retained the RFC to perform a range of light exertional work. T. 349. She based her RFC determination on the evidence from

---

[4] The ALJ determined that Plaintiff engaged in substantial gainful activity in June, July, August, and September, 2006, during which he earned in excess of $870.00. T. 342, 430. See 20 C.F.R. § 404.1574(b)(2)(ii)(B). Moreover, the ALJ found that Plaintiff's work at Darien Lake Theme Park was not an unsuccessful work attempt since it ended due to seasonal closure rather than Plaintiff's impairment. T. 342. See 20 C.F.R. § 404.1574.

Dr. Meng, a consultative examiner, and Drs. Leone and Cotsen, Plaintiff's treating physicians,[5] who observed that Plaintiff's physical examinations and test results were largely normal with mild to moderate limitations. T. 204, 217, 227, 350-53. Specifically, Dr. Meng noted a 90-degree flexion extension of the left knee and muscle strength at grade 5-/5 in the left leg, resulting in a finding of mild limitations in heavy lifting, walking, standing, running, walking up and down stairs; and moderate limitations in bending, extension, and twisting. T. 227-28. Likewise, Dr. Leone observed that Plaintiff had normal gait, full muscle strength, full range of motion, and normal reflexes. T. 355. Dr. Cotsen also noted that Plaintiff's gait was normal and his motor functions and deep tendon reflexes were symmetrical, and stated that the Plaintiff appeared healthy. Id. The ALJ also considered objective imaging tests, in particular an x-ray of Plaintiff's right knee taken in May, 2006, which was negative. T. 355. Finally, she evaluated Plaintiff's own statements and alleged functional limitations in determining his RFC. T. 349-52.

In determining a claimant's RFC, the ALJ must consider "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs; the opinions of treating and consultative physicians; and statements by the claimant and others

---

[5] The ALJ also considered the opinion of treating physician Dr. Buran, but rejected his opinion on the issue of disability for reasons discussed in further detail below. See Discussion at IV.B.

concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010); (citing 20 C.F.R. § 404.1545(a)(3)); see also 20 C.F.R. §§ 404.1512(b), 404.1528, 404.1529(a), 404.1545(b). In this case, I find that the ALJ applied the proper standard for determining the Plaintiff's RFD, and that her determination is supported by substantial evidence.

Third, Plaintiff contends that the ALJ's credibility determination of Plaintiff was incorrect. Pl. Mem. 5.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of

medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

After evaluating the evidence, the ALJ found that Plaintiff's allegations regarding his functional limitations were not entirely credible. T. 352. She pointed out Plaintiff's inconsistent statements regarding his capabilities, such as performing household chores, lifting objects, and performing self-care and child care. T. 352-53. She evaluated the objective medical evidence, including x-rays, CT scans, and MRIs, most of which were unremarkable or otherwise revealed minor abnormalities. She also considered the opinions of Plaintiff's treating physicians, as well as Plaintiff's medications and course of treatment, noting that Plaintiff ultimately stopped taking pain medication altogether. T. 352, 354-55. Accordingly, the ALJ properly evaluated Plaintiff's credibility, see 20 C.F.R. § 416.929(c)(3), and her assessment was supported by substantial evidence.

Fourth, Plaintiff avers that since the ALJ's hypothetical to the vocational expert did not include each of his alleged

limitations, it was incomplete and therefore the VE's opinion cannot constitute substantial evidence. Pl. Mem. 7-12.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998). The ALJ may properly rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). The ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(b)(2).

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the claimant's limitations that are supported by medical evidence in the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments....") (internal citations and quotation marks omitted).

After finding that Plaintiff's RFC precluded him from performing any of his past relevant work, the ALJ proceeded to the fifth and final step of the sequential analysis and determined that Plaintiff was not disabled since he retained the RFC to perform work which existed in significant numbers in the national economy. T. 355-57. Specifically she found that Plaintiff retained the RFC to perform light work, which included lifting/carrying/pushing/pulling 20 pounds occasionally and 10 pounds frequently. During the course of an 8-hour workday, Plaintiff could sit for about 6 hours and stand and/or walk for 3 hours. He could frequently balance as well as occasionally climb/descend stairs and stoop, but could not kneel, crouch, or crawl. T. 349. Plaintiff had a high school education and was a younger individual at the close of his requested period of disability. The transferability of job skills was not an issue since the Medical-Vocational Guidelines ("the Grids") directed a conclusion of "not disabled" for a claimant with Plaintiff's vocational factors and RFC, regardless of transferability of job skills. T. 356. See 20 C.F.R. Part 404, Subpart P, Appx. 2, Rules 201.28-29, 202.21-22; 20 C.F.R. § 404.1565. To determine the extent of erosion of the unskilled light occupational base caused by non-exertional limitations, the ALJ asked the VE whether jobs existed in the national economy for an individual of Plaintiff's age with his level of education, past relevant work, and RFC. The

VE testified that the individual would be capable of performing the occupations of cashier, bench assembler, and office helper. T. 531-32.

Contrary to Plaintiff's assertion, "[t]he ALJ is not required to submit to the vocational expert every limitation alleged by the claimant, but must only convey all of a claimant's credibly established limitations." Collins v. Comm'r, No. 13-CV-0412, 2014 WL 4167012, at *14 (N.D.N.Y. Aug. 20, 2014). The ALJ's hypothetical properly included each of Plaintiff's credibly established limitations and mirrored his RFC which, as previously discussed, is supported by substantial evidence. See Dumas, 712 F.2d at 1553-54.

For all of these reasons, the Court finds that the ALJ's determinations at steps four and five were supported by substantial evidence.

### B.   Treating Source Evidence

Plaintiff also argues that under the proper application of the "treating physician rule," a finding that he is disabled is warranted for a closed period and a trial work period. Pl. Mem. 13.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C .F.R. § 404.1527(c)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Schisler v. Sullivan, 3 F.3d

563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. Saxon v. Astrue, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. Otts v. Comm'r, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record")."While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." Martin v. Astrue, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

ALJ Gregg did consider the opinions of Plaintiff's treating physicians Drs. Flynn and Buran, whose diagnoses and treatment patterns were largely consistent with one another and with the objective medical evidence. T. 354. She did, however, reject their conclusions that Plaintiff was disabled. T. 353. Citing to SSR 96-5p, 1996 WL 374183, at *5, she reasoned that the opinion on the ultimate issue of disability is reserved to the Commissioner and thus did not afford the opinions "any significant weight." Id. The ALJ did not err in rejecting these opinions, see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (a treating physician's statement

that claimant seeking social security disability benefits is disabled cannot itself be determinative on that issue.), and provided the requisite "good reasons" for doing so. See Otts, supra.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#6) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt.#12) is granted. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                              S/Michael A. Telesca
          _____
                         MICHAEL A. TELESCA
                         United States District Judge

Dated:      Rochester, New York
            September 17, 2014